Captain Sheriff SAUDI, Plaintiff

v.

S/T MARINE ATLANTIC, Her Equipment and Appurtenances, In Rem (a/k/a M/V Marine Atlantic, Her Equipment and Appurtenances, In Rem, a/k/a M/T Marine Atlantic, Her Equipment and Appurtenances, In Rem), Marine Atlantic, Ltd., John Doe Company, Owner of the Vessel Marine Atlantic, Acomarit Services Maritimes, S.A., Osprey Acomarit Ship Management, Inc., Valmet–Appleton, Inc., Appleton Machine Co. (Appleton Marine Division), Appleton Machine Co., Inc., Appleton Marine, Inc., John Doe Company, Designer of the Crane, Koch Petroleum Group, L.P., Jurong Shipyard, Ltd. and United States Trust Company of New York, Defendants

No. CIV. A. H–99–2367.

United States District Court, S.D. Texas, Houston Division.

July 24, 2001.

Joe Alfred Izen, Jr., Izen & Associates, Bellaire, TX, Afton Jane Izen, Bellaire, TX, for Captain Sheriff Saudi.

Thomas R Nork, Bell Ryniker et al., Houston, TX, for Marine Atlantic Ltd., Acomarit Services Maritime, SA, Osprey Acomarit Ship Management, Inc.

Hollis Horton, Orgain, Bell & Tucker, Beaumont, TX, for Appleton Machine Co., Appleton Machine Co., Inc., Appleton Marine, Inc.

F Michael Stenglein, Weil Gotshal & Manges, Houston, TX, for United States Trust Co. of New York.

Michael Evan Jaffe, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Michael D. Hudgins, Hudgins Hudgins and Warrick, Houston, TX, David Kelleher, Stephen M. Hall, Arent Fox et al., Washington, DC, for Valmet-Appleton Inc.

Steven Michael Duble, Hays McConn Rice and Pickering, Houston, TX, for Koch Petroleum Group, Koch Shipping, Inc., Koch Supply and Trading Co.

David Patrick Ayers, Fulbright & Jaworski, Houston, TX, Innes A MacKillop, White MacKillop et al., Houston, TX, for Marine Transport Lines, Inc., Marine Transport Corp.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced admiralty and maritime personal injury action, arising from the May 17, 1999 fall of Plaintiff Captain Sheriff Saudi ("Plaintiff" or "Saudi") from a lifting basket as he was transferred from the tanker Marine Atlantic to the M/V American Discovery because of the collapse of an allegedly defective portside crane on the tanker Marine Atlantic, are the following motions and matters needing a ruling:

(1) Defendants Marine Atlantic Ltd., Osprey Ship Management ("Osprey"), and Marine Transport Corporation's ("Transport's") joint motion to strike Plaintiff's expert witnesses (instrument # 220), Salah Mahmoud & Captain Sheriff Saudi, United States Magistrate Judge Frances Stacy's memorandum and recommendation of 1/26/01 (# 258) that Defendants' motion to strike be granted in part, and Plaintiff's objections and exceptions to that memorandum and recommendation (# 262);

(2) Plaintiff Captain Sheriff Saudi's motion for rehearing (# 242) of the Court's order granting summary judgment on Plaintiff's claims for punitive damages (# 224);

(3) Joe Alfred Izen, Jr. and Afton Jane Izen's motion for rehearing or new trial (# 244) on a Rule 54(b) final judgment, signed on December 19, 2000 (# 230), awarding fees and expenses to Defendant U.S. Trust Company of New York ("U.S.Trust") under 28 U.S.C. § 1927, to be paid jointly by Plaintiff's attorneys,

and Defendant U.S. Trust's related motion for sanctions and to strike (# 260) the Izens' supplement to motion for new trial (# 254) and trial exhibit to their motion (# 259);

(4) Plaintiff's motion for rehearing (# 245) on order signed on December 15, 2000 (# 222) granting summary judgment to Defendants Koch Shipping, Inc. and Koch Supply & Trading Company Ltd. on all Plaintiff's claims against them;

(5) Plaintiff's motion for rehearing (# 246) of the Court's memorandum and order dated December 21, 2000 (# 237) dismissing Marine Atlantic Ltd. for lack of personal jurisdiction;

(6) Plaintiff's cross motion for sanctions (# 265); and

(7) Defendants Acomarit Services Maritimes S.A., Marine Atlantic Ltd., and Osprey Ship Management Inc.'s opposed motion for entry of final judgment (# 266).

The Court addresses the motions in the same order.

## SAUDI'S EXPERT WITNESSES

The trial court has discretion under Federal Rule of Evidence 702 to exclude expert evidence, and that decision is reviewed only for abuse of discretion. *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir.2000), *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir.1998) ("With respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous."). "The question of admissibility of expert testimony is not ... an issue of fact, and is reviewable under the abuse of

discretion standard." *General Electric Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *see also Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 667–68 (5th Cir.1999). The trial judge must first preliminarily assess "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts at issue" to be certain of the relevance and reliability of the evidence. *Daubert*, 509 U.S. at 592–95, 113 S.Ct. 2786. The High. Court required the district court to be the "gatekeeper" under Rule 702 to insure that these two requirements of relevance and reliability are met. *Id.* at 2796–97. The Supreme Court identified four, nonexhaustive factors for the trial judge to consider in determining reliability—whether it will assist the trier of fact and can be tested, whether it has been subjected to peer review, the known or potential error rates and the existence of standards controlling the technique's operation, and the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community—but warned they do not constitute a definitive checklist. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786.

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–53, 119 S.Ct. 1167, 1174–76, 143 L.Ed.2d 238 (1999), the Supreme Court extended the gatekeeping function beyond scientific experts to non-scientific testimony because Rule 702 does not distinguish between "scientific" knowledge and "technical" or "other specialized" testimony, and underlined that the trial judge "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." The Supreme Court

made clear that the test for reliability for nonscientific experts is "flexible" and that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.*

Defendants Marine Atlantic Ltd., Osprey Ship Management ("Osprey"), and Marine Transport Corporation ("Transport") jointly moved to strike the opinions of Plaintiff's experts, Dr. Salah Mahmoud and Plaintiff, himself. Instrument # 220. Specifically, Mahmoud opined that a December 1998, American Bureau of Shipping ("ABS"), 50,000–pound–load test of the crane in issue could not have been performed, or could not have been performed and passed as documented, in December 1998 because the crane would not have failed in May 1999, when the aggregate weight of Saudi, his personal belongings, and his radio equipment was no more than 250 pounds, if the crane had been so tested and passed. In finding that Mahmoud's "expert" opinion was inadmissible under Fed.R.Evid. 702,[1] Magistrate Judge Stacy characterized Mahmoud's conclusion as "pure speculation" because Mahmoud admittedly was not present[2] at the stated time of the test, nor did he present any facts or data to support his conclusion.[3] She further found that Mahmoud also failed to address, no less explain, why nothing else that occurred during the six months between the ABS survey and the crane failure could have not have caused or contributed to that failure. Mahmoud also gave his opinion about the rate of corrosion of the teeth on two spline gears (to the point where they could no longer support the load on the crane) based on his unsupported belief that the crane was submerged in salt water. He applied a corrosion rate for metal submerged in saltwater, even though there was no evidence that the crane had ever been submerged. Therefore the magistrate judge found that his opinion rested on insufficient facts and data. She further determined that his deposition demonstrated that he was not qualified to offer opinions on crane maintenance and inspection requirements. She emphasized that Mahmoud had had no training or experience in the inspection of cranes and was generally unaware of rules, regulations and industry standards governing the maintenance and inspection of cranes. Lastly, Mahmoud determined that the amount of corrosion on two spline gears, from the difference in length of existing (or intact) teeth and the worn teeth on the gears, was .21 to .25 inches. Although Magistrate Judge Stacy found that Mahmoud had not calibrated the

1. Before December 1, 2000, Fed. Rule of Evid. 702 stated, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Rule 702 was amended as of December 1, 2001 and made applicable to pending cases by order of the Supreme Court "insofar as is just and practicable." The revised rule provides,

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, train-

ing, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2. Mahmoud's deposition, Ex. 2 to motion to strike, at p. 45, 11. 3–14.

3. Mahmoud admitted that he had no evidence or first-hand knowledge that the load test documentation had been falsified, but merely insisted such falsification "was possible." Ex. 2 to motion to strike at p. 46, 1.22—p. 47, 1. 22.

equipment he had used to measure the crane parts at issue and did not know the original diameters of the two gears, she did not strike his opinion as to the amount of corrosion on the two spline gears.

Saudi claimed to be an expert in the following seven areas: (1) the inspection of cranes, (2) the load testing of cranes, (3) applicable standards, rules and regulations regarding crane inspections, (4) applicable standards, rules and regulations regarding load testing, (5) applicable standards, rules and regulations regarding quadrennial inspection of cranes, (6) classification society standards, including those of the ABS, Det Norske Veritas ("DNV"), and Lloyd's of London ("Lloyd's"), for inspection of cranes, and (7) the duties, responsibilities, and the standard of care applicable to the refurbishing of vessels. After reviewing his deposition testimony,[4] Magistrate Judge Stacy found that it conclusively demonstrated that Saudi had no training, experience or personal knowledge that would qualify him as an expert in crane inspection, load inspections, or applicable rules, regulations and industry standards for the inspection of cranes and the refurbishment of vessels. She found that Saudi's many years of experience as a master of vessels, mooring master pilot, and instruction pilot did not qualify him as an expert in crane inspection and maintenance. She therefore recommended that this Court disallow his expert testimony on (1) the inspection of cranes, (2) the load testing of cranes, (3) applicable standards, rules and regulations regarding crane inspections, load testing, and quadrennial inspection of cranes, (4) classification society standards, including those of ABS, DNV, and Lloyd's, for inspection of cranes, and (5) the duties, responsibilities, and standard of care applicable to the refurbishing of the Marine Atlantic.

Saudi has filed objections and exceptions to Magistrate Judge Stacy's recommendation that the motion to strike be granted in large part (# 262), along with a new affidavit of Mahmoud.

First, he objects on procedural grounds that the Court is required to hold an evidentiary hearing at which an expert is given the opportunity to demonstrate the reliability of the factual and scientific basis for his proffered opinion. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786 (1993).

█ This Court concludes that this argument is frivolous. *Daubert* does not require a hearing, but instead recognizes that the "inquiry" required is "a flexible one." *Id.* at 594–95, 113 S.Ct. 2786. In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 142, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("The trial court must have ... latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* the expert's testimony is reliable."), the expert's proffered testimony was from a deposition and the trial court denied a hearing on the grounds that the record was adequate for a *Daubert* inquiry. Numerous appellate courts have held that an evidentiary hearing is not required under *Daubert,* but instead at the discretion of the district court, especially where, as here, there is a sufficient record consisting of depositions to investigate relevance and reliability. *See, e.g., Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir. 1999); *Oddi v. Ford Motor Co.,* 234 F.3d 136, 153–55 (3d Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1357, 149 L.Ed.2d 287 (2001); *United States v. Benavidez–Benavidez,* 217 F.3d 720, 724 (9th Cir.), *cert.*

4. Saudi's complete deposition testimony was submitted as exhibit 1 to the motion to strike.

*denied,* 531 U.S. 903, 121 S.Ct. 242, 148 L.Ed.2d 174 (2000); *Goebel v. Denver and Rio Grande Western R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir.2000).

Substantively, Saudi challenges the magistrate judge's finding that there are no data or reliable methodologies to support Mahmoud's opinion that the December 1998 ABS survey could not have occurred. He contends that there was no survey and that there is no ABS certification to show there was a survey for testing the portside cargo hose crane. He also asserts that it is undisputed that gears the size of those in the crane corrode at a known rate if their stainless steel is exposed to salt water and that such exposure occurred when the vessel S/T Marine Atlantic was anchored for thirteen years in Borneo, Indonesia. It is also undisputed that the meshed teeth and gears of the crane's spline coupling, which were supposed to mesh together, spun freely, allowing the crane arm to collapse. He argues that to the extent that the magistrate judge shifts the burden to Plaintiff or Plaintiff's expert of disproving the existence of non-negligent causes for the crane's failure, the magistrate judge's memorandum and recommendation errs. A plaintiff in a negligence case is not required to disprove the existence of all possible non-negligent causes for his injury; rather he must prove that negligence was the most likely cause. Thus Saudi's experts should not be stricken because their testimony does not provide proof that Plaintiff is not required to produce. He submits a new affidavit from Mahmoud to support this "Exception and objection."

Next, Saudi insists that Defendants' claim that Mahmoud based his corrosion calculations on the belief that the crane was submerged in salt water is false. The deposition excerpt, at p. 22, 1. 24—p. 25, 1.25. demonstrates that Mahmoud said that the crane's metal was "exposed," not "submerged" and distinguished the two terms. Mahmoud then continued to explain that the rate of corrosion was affected by the velocity of salt water moving across the corroding surface. *Id.* at p. 24, 11. 1—p. 25, 1. 12. Again he refers to Mahmoud's newly submitted affidavit for support.

Third, the magistrate judge's finding that Mahmoud's deposition testimony demonstrates that he is not qualified to offer opinions on crane maintenance and inspection requirements is again based on statements taken out of context, insists Saudi. He argues that just because Mahmoud has not memorized all the ABS rules and regulations and has not worked for a crane manufacture does not mean his testimony is unreliable here. If Defendants had properly remanufactured or refurbished the crane, they would have found the corrosion in 1994. Saudi emphasizes that Defendants have not offered and cannot offer an expert opinion that the corrosion occurred in only five months or five years. He insists that proper lubrication to the gears and splines would have arrested any corrosion and prevented the crane failure. He reiterates that Defendants have admitted that they were unaware of the existence of the spline coupling and the significance of its exposure to salt water and that they never performed maintenance or replaced the corroded parts. Given these facts, he urges, Mahmoud's training and experience are sufficient for a reliable opinion.

Saudi also questions the magistrate judge's finding that Saudi was not qualified to testify on the seven designated areas. Saudi now submits another personal affidavit and a correct copy of the ABS regulations, as well as a copy of the International Safety Management ("ISM") Code, to support the current objections

and exceptions to the magistrate judge's memorandum and recommendation and to show that a master of a vessel or a Mooring Master pilot must be familiar with these regulatory requirements to safeguard his vessel and to insure that it is properly documented and certified for its owners and charterers. Saudi also submits a letter demonstrating that the S/T Marine Atlantic did not obtain proper accreditation from ABS due to patent deficiencies in the accreditation application, including lack of drawings. Saudi maintains that negligence in the maintenance of the vessel or its remanufacture is not solely governed by or determinable by the regulations or protocols of ABS, Lloyd's, and other societies.

In response Defendants argue that the exceptions and objections constitute a late-filed, supplemental response to their motion to strike that seeks to relitigate issues already decided.[5] Defendants highlight the fact that Saudi had ample time to submit evidence supporting his experts' qualifications and opinions timely, to ask about their opinions during their depositions in the fall of 2000, and to meet the October 2, 2000 deadline to submit expert reports. Although Defendants filed their motion to strike on December 14, 2000 and Saudi responded on January 8, 2000, he failed to attach any affidavits to that response, did not request a *Daubert* hearing, and did not ask for an extension of time to submit affidavits or other documents. They therefore request the Court to adopt the magistrate judge's memorandum and recommendation and to strike Mahmoud and Saudi as expert witnesses.

Contrary to Saudi's representations, Defendants insist that they did not "hoodwink" the Court or cite testimony out of context. Rather, attached to their motion to strike is a complete copy of the deposition of Mahmoud and a complete copy of the second day of Saudi's deposition testimony, which addressed the expert witness issues.

Defendants contend that the newly submitted affidavits are untimely. They are also self-serving and have not been subjected to cross-examination. Saudi should have asked relevant questions of these expert witnesses during their depositions to bring out the information. Because Defendants now do not have an opportunity to cross examine the witnesses, Defendants claim they are prejudiced, especially in light of the fact that the discovery deadline and the deadline for submitting expert reports have passed, that the new affidavits are merely efforts to file late expert reports which Defendants could not review before timely submitting their own expert reports, and Defendants had already deposed these witnesses. They move to strike the affidavits attached to Saudi's objections and exceptions from the record.

Furthermore, given the lack of logic in refusing to recognize that any number of events between the test in December 1998 and the failure of the crane five months later could have contributed to that collapse, Defendants maintain that the magistrate judge correctly ruled that there is no reliable basis for Mahmoud's speculative opinion that the December 1998 weight test did not take place. They submit a copy of the "Cargo Gear Statement of Fact Survey" for the Marine Atlantic, dated December 31 1998 and reflecting the testing was done that month. Ex. 1. Moreover, they insist that Mahmoud did apply

---

**5.** Actually, Magistrate Stacy's memorandum and recommendation is exactly what it is titled, and does not become a decision of the Court unless and until the Court approves of and adopts her findings and conclusions. Nevertheless, the Court agrees that the arguments should have been timely presented to her.

the wrong corrosion rate to the metal coupling at issue. The portside of the crane was always located on the main deck of the vessel and was never submerged in salt water. Yet the following was said during his deposition:

Q. But the rate that you relied upon in your report was based on the metal being submerged in seawater?

A. That's fine, yes.

Ex. 2 to motion to strike, at p. 130, 11. 22–25. The corrosion graph that he presented at his deposition was entitled, "Effect of velocity on corrosion of steel by seawater at ambient temperatures." Ex. 2 to Defendants' response (# 263). During his deposition his testimony demonstrates that the graph referred to metal submerged in salt water:

The graph shows corrosion rates of steel and seawater as a function of velocity, if the seawater is stagnant or moving at whatever speed. As it shows in the "X" axis and the velocity, the Y axis is corrosion rate in mils per year. And as it shows, as the velocity increases, the corrosion rate increases.

Id. Thus because the testimony about the rate of corrosion is erroneous, his conclusions about corrosion rates are not reliable. Mahmoud did not present any proof of corrosion rates other than those relating to the submersion of metal in salt water.

Moreover, in Mahmoud's new affidavit he concedes, "Dr. Mahmoud never stated he is a crane maintenance expert, nor a crane inspector." Defendants find this admission contrary to what he stated in his expert report ("I am familiar through experience with the inspection of lifting cranes.") and to Saudi's arguments in his exceptions and objections. Thus the magistrate judge did not err in concluding that Mahmoud is not a crane maintenance or inspection expert, insist Defendants.

They also maintain that the magistrate judge correctly concluded that Saudi, himself, was not an expert in the areas he claimed. His new, untimely affidavit, which was not filed as an expert report nor in opposition to their motion to strike expert witnesses, is self serving and has not been subjected to cross-examination, thus prejudicing them in the same ways as Mahmoud's, Defendants urge. During his deposition, Saudi was questioned about his knowledge of the ABS regulations, the ISM Code, and his lack of expertise regarding maintenance issues, and he did not mention these latest opinions. Ex. 1 to motion to strike expert witnesses. His deposition testimony reveals that he does not have the expertise to testify about the ABS regulatory requirements despite his arguments in his exceptions and objections, but relied on what he was told by ABS surveyors. Ex. 1 to the motion to strike, p. 252, 11. 8–20. Saudi further testified that he had never worked for ABS, had never had formal training in ABS rules and regulations, and could not remember the last time he looked at the ABS manual pertaining to crane inspections and could not remember its title or reference. Id. at p. 418, 11. 3–11; p. 309, 1. 15—p. 310, 1. 19. He also conceded that he "did not read, really, their regs, explicit specifications and I cannot claim that I am an expert about it." Id. at p. 257, 11. 5–7.

Saudi's newly submitted affidavit represents that he is an expert about the International Safety Management ("ISM") Code, even though he claimed no such expertise during his deposition, during which he erroneously calls the ISM the "International Safety Measurement" Code, was in the following exchange:

Q. And where does that requirement come from?

A. This is, this is a requirement from, I guess, the safety measurements of ISM,

if I under stand right, International Safety Measurement.

Q. You guess?

A. I am guessing, yes. I don't know exactly where it came from. But I know that there is a certificate that was not there.

Q. But you are not sure what requires that?

A. No, I am not sure which authority requires that exactly.

Ex. 1 to the motion to strike, at p. 299, 1. 18—p. 300, 1. 3. The new affidavit also refers to maintenance requirements, suggesting Saudi is an expert in that area. Yet during his deposition, the following was asked:

Q. And you don't hold yourself out as a crane maintenance expert, correct?

A. No I do not. No I am not.

*Id.* at p. 433, 1. 24—p. 434, 1.1.

For these reasons, Defendants ask the Court to deny Plaintiff relief and uphold the magistrate judge's recommendations.

■■■■ The Court has reviewed the record *de novo*, including the deposition testimony submitted. Based on the record that was before Magistrate Judge Stacy when she issued her memorandum and recommendation, the Court fully agrees with her findings and conclusions. Moreover, the Court concurs with Defendants that the new affidavits should be stricken.

Not only would they greatly prejudice Defendants at this stage of the litigation, but the inconsistencies between the affidavits and deposition testimony have not been explained by Plaintiff.[6] Because the self-serving affidavits contradict Saudi's and Mahmoud's sworn statements during their depositions, without any explanation, no less a logical or persuasive one, the affidavits are incompetent evidence and have not been considered by the Court in determining whether the expert's testimony is reliable. *S.W.S. Erectors Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 136 n. 23 (5th Cir.1992); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223 (5th Cir.1984) (rejecting sworn statement of affiant when it contradicted affiant's earlier deposition testimony). The Court accordingly overrules Saudi's objections and exceptions, adopts the magistrate judge's findings and conclusions as its own, and grants Defendants' motion to strike expert testimony to the extent indicated.

## MOTIONS FOR REHEARING

The Court next addresses the motions for rehearing.

### A. Instrument # 242

Plaintiff's moves for rehearing (# 242) of the Court's order of December 15, 2000 (# 224) granting summary judgment to Defendants Marine Atlantic, Ltd., Osprey

---

**6.** Although the motion before the Court is not one for summary judgment, the same concerns make the evidence here incompetent. Where a plaintiff attempts to raise a fact issue by relying on statements in his affidavit that contradict his earlier sworn deposition testimony, the affidavit is not competent evidence and should be disregarded. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit which impeaches, without explanation, sworn testi-

mony."); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 136 n. 23 (5th Cir.1992) (holding that plaintiff's affidavit contradicting his previous deposition could not defeat defendant's summary judgment); *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969) (granting summary judgment for defendant, disregarding plaintiff's affidavit because plaintiff had never before made the specific factual allegations stated in the affidavit, despite having been asked several times during his deposition to specify the allegations that supported his claim).

Ship Management ("Osprey"), Marine Transport Corporation ("MTC"), Marine Transport Lines, Inc. ("MTL"), and Koch Shipping, Inc. ("Koch") on Plaintiff's claims for punitive damages (# 224), which the Court concluded are not recoverable against Defendants under maritime law. Saudi argues that punitive damages are allowed and are supported by factual evidence of gross negligence or intentional conduct. To establish the applicability of punitive damages here, he refers to the testimony of Richard Farman, involved in the remanufacture/refurbishing of a portside hose handling the crane, who never broke the crane down to inspect all of its pieces before releasing it for use by the owners or managers of the S/T Marine Atlantic as remanufactured/refurbished; to "new evidence" from the deposition of Osprey Acomarit Services Maritimes, S.A.'s ("Osprey–Acomarit's") employee, Tom Garrett, that Osprey–Acomarit failed to lubricate properly the spline and coupling on the crane, even though there was a diagram of the crane in the on-board manual in the Chief Engineer's office; and to Dr. Salah Mahmoud's affidavit and deposition testimony stating that the lifting survey that allegedly occurred in December 1998 (five months before the crane failed while lifting Plaintiff) was never performed. Saudi also alleges that the Marine Atlantic, Ltd. crew failed to monitor that test to make sure that it was carried out. He charges that Defendants displayed "conscious disregard" for proper maintenance, supporting a finding of gross negligence. Saudi relies on *In re: Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421, 1429 (11th Cir.1997) (holding that "personal injury claimants have no claim for nonpecuniary damages such as ... punitive damages, except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman, and in those very rare situations of intentional misconduct.").

In response, incorporating their earlier pleadings, Defendants note that the motion is inherently defective because it fails to include any of the evidence it references. Providing an excerpt of Tom Garrett's deposition, moreover, Defendants controvert Saudi's allegation that they consciously disregarded the lubrication of the spline gears and coupling by pointing out that Garrett testified that he assumed that there was a solid shaft through the area in question and, from his recollection after reviewing the manual in 1997, that there was no reason to believe that a spine coupling was hidden under the plating or that the coupling required maintenance of any kind. Ex. 1, p. 218, ll. 8–15; p. 274, ll. 5—p. 275, l.3. Garrett also stated that the service manual did not indicate that any service maintenance or inspection was required for this coupling. *Id.* at p. 284, ll. 6–14. Furthermore, Garrett had no recollection of any specific requirements in the manual for lubricating a spline shaft for the crane at issue. *Id.* at 289, ll. 20–22. Although Plaintiff's purported expert, Salah Mahmoud, testified that the crane manual "spells out everything that needs to be done in terms of maintenance (ex. 2 at p. 55, ll. 14–21)," the "Instruction, Operation & Maintenance Manual" prepared by Appleton Marine does not refer to lubrication or inspection of the spline coupling as part of any maintenance requirement. Ex. 3. Moreover, MTL's representative, Richard Farman, testified that the manual was reviewed before or during the vessel's reactivation in 1994 and that he was not aware of any indication in the manual that the coupling needed maintenance. Ex. 4, excerpt of Farman's deposition, p. 23, ll. 21–24; p. 27, ll. 11–15; p. 172, ll. 17—p. 173, l. 1; p. 181, ll. 13–19.

Defendants further observe that because this Court has previously dismissed Acomarit and Marine Atlantic Ltd. from this case, there is no longer any claim involving crew members aboard the S/T Marine Atlantic.

Defendants emphasize that there is no evidence of conscious disregard of the coupling by the vessel's crew. Even though Marine Atlantic arranged for Saudi to depose the vessel's master, chief officer, chief engineer, and crane operator, Saudi declined the opportunity.

Defendants further highlight the absence of any evidence supporting Saudi's allegation that Marine Atlantic was negligent in not requiring the breakdown and inspection of all moving parts of the crane during the reactivation of the vessel by Keppel Shipyards in Singapore in 1993. Nor does Saudi submit any evidence to support his contention of intentional wrongdoing by MTL to support a claim for punitive damages. Nor does he point to any authoritative source (law, regulation, industry standard, or manufacturer's recommendation) that requires a complete breakdown and inspection of the crane in dispute.

Defendants assert that they demonstrated in their joint motion to strike Plaintiff's experts (# 220) that the "expert" testimony of Dr. Mahmoud, who admitted that he was not present at the time the ABS weight test was carried out in December 1998 and that he had no knowledge whether the test documentation had been falsified, is inadmissible; and that Dr. Mahmoud had no first-hand knowledge of the

test and his opinion was accordingly stricken by Magistrate Judge Stacy. In contrast, the undisputed evidence and documentation in the case demonstrate that the weight test was performed. Ex. 5, ABS documentation of weight test.

As for Saudi's contention that he is entitled to punitive damages because Marine Atlantic Ltd.'s crew intentionally failed to monitor the weight test properly to insure that it was carried out, Defendants note that again Saudi provides no supporting evidence. They also claim that the assertion is false. Had Saudi taken the deposition of Captain Marcenaro, Marine Atlantic's master, Saudi would have discovered that Marcenaro did attend the weight test in December 1998, saw the weights applied to the crane and the crane lift the weights as the ABS survey and shipyard representatives watched.[7] Thus no factual basis supports allegations of misconduct against Defendants.

■ After reviewing the record, the Court agrees that Saudi has completely failed to meet his burden of proving intentional misconduct, while Defendants have controverted his conclusory allegations with evidence., Accordingly the Court denies the motion for rehearing (# 242) of its earlier order.

**B. Instruments # 244 and # 260**

1. Joe Alfred Izen, Jr. and Afton Jane Izen move for rehearing or new trial (# 244), with supplement (# 254), on the Court's Rule 54(b) final judgment, signed on December 19, 2000 (# 230),[8] awarding

7. Defendants state that before Marine Atlantic Ltd. was dismissed from this action, it was going to preserve Marcenaro's testimony for trial through a *de bene esse* deposition.

8. There are actually three orders underlying Saudi's motion. In an order dated September 5, 2000 (# 159), the Court awarded U.S.

Trust fees and expenses under 28 U.S.C. § 1927 because it concluded that Saudi sued U.S. Trust without adequate investigation and then subsequently unreasonably and vexatiously multiplied the proceedings even after Defendant Marine Atlantic Ltd. admitted in pleadings filed in this action that it owned the vessel in dispute at the relevant time. In its

fees and expenses to Defendant U.S. Trust under 28 U.S.C. § 1927, to be paid jointly by Plaintiff's attorneys, for unreasonably and vexatiously multiplying proceedings by refusing to dismiss frivolous claims against U.S. Trust disproved by evidence on file that Marine Atlantic Ltd. has owned the vessel since 1994, including in May 1999, the time of Saudi's injury. Saudi explains that the Court agreed with U.S. Trust that Saudi's claims against it were based on its alleged ownership of the vessel when Saudi was injured. Plaintiff points out that in support of Defendants' joint motion to strike Plaintiff's experts, Defendants had attached as Exhibit 3 the Expert Report of Robert Groesbeck, an ABS document that lists U.S. Trust as the owner of the M/V Marine Atlantic from 1979 until 1994. Izens' motion for rehearing or a new trial, Ex. A at p. 15. The Izens also argue that Saudi's claims against U.S. Trust were not limited to claims arising from U.S. Trust's ownership or management of the vessel at the time of Saudi's injury. As a comparison, they emphasize that the Court denied Defendants Marine Transport Lines, Inc.'s and Marine Transport Corporation's motions for summary judgment even though these Defendants never owned the vessel, but merely supervised its refurbishment in 1994. The Izens ask the Court to rehear the matter and to vacate its order of December 19, 2000 awarding sanctions against them. The Court presumes that they seek vacation of # 229 and 230 also.

In a supplement (# 254), the Izens attach an authenticating affidavit of Joe Alfred Izen Jr., a letter (Ex. A) from Innes MacKillop, Defendants' counsel, and business records of the transaction whereby Shawmutt Bank Connecticut as "successor the United States Trust Company of New York, not in its individual capacity but solely as owner trustee under the trust agreement dated as of January 31, 1979," transferred title of the vessel S/T Marine Atlantic to Marine Atlantic, Ltd. Exhibits B–O. The Izens insist that there was no basis in the record, nor any prior basis, for requiring them to guess that the U.S. Trust Company involved in the ownership of the vessel was a company other than U.S. Trust. Moreover, these records "underscore the need which Plaintiff faced to take a deposition to determine U.S. Trust's powers (either exercised or retained) over the vessel when U.S. Trust Co. of New York became 'owner/trustee.'" Izens' motion at 2.

In response (# 255), U.S. Trust objects that the Izens, in seeking a rehearing, fail to allege or offer any new evidence that the Court has not already considered and that their motion "is another attempt to draw out Trust's involvement in this lawsuit and force Trust to waste more time and money responding to meritless motions." Response at 2. U.S. Trust also points out that the motion should be stricken because the Izens have not met their certificate-of-conference obligations.

U.S. Trust argues that the Izens have not established the admissibility of the document entitled "Cargo Gear Certification and Testing" of the vessel at issue, purportedly conducted by Robert P. Groesbeck, which they keep attaching to their motions. See Ex. A to # 214 for full copy.

order entered on December 19, 2000 (# 229), based on a supporting affidavit submitted by U.S. Trust, the Court ordered the Izens, responsible as Plaintiff's counsel, jointly and severally to pay U.S. Trust $28,601.78 for reasonable and necessary fees and $1,718.78 for necessary costs incurred by U.S. Trust after the Izens insisted on pursuing their claims despite the fact that evidence had been filed disproving the basis of their claims against U.S. Trust. The Court then issued a Rule 54(b) judgment in favor of U.S. Trust against Saudi on all claims (# 230).

It is not based on personal knowledge, nor is it sworn to or even signed by Groesbeck, and is thus unauthenticated hearsay. Moreover, the document was supposedly created by an expert witness who has not been shown to be an expert. Furthermore, contends U.S. Trust, even if it were admissible, it fails to challenge the judgment. U.S. Trust reiterates that the evidence filed with the court conclusively disproved the basis of the three claims against them: two required U.S. Trust to have been the owner of the vessel in May 1999, which the Izens still cannot show, and the other claim required Trust to have been Saudi's employer at that time. Their motion does not contest the amount of the attorney's fees or costs awarded by the Court. Therefore U.S. Trust asks the Court to affirm its judgment and deny the Izens' motion.

U.S. Trust also contests the Izens' claim that they never limited Saudi's potential claim against U.S. Trust to its ownership or management of the vessel at the time of Saudi's injuries. The language of the complaint reflects that the claims against U.S. Trust were only filed against U.S. Trust as the owner of the vessel. Even if the Izens had not so limited their negligence claims against U.S. Trust, the controlling law does, as discussed in U.S. Trust's motion for summary judgment, pp. 2–4, and as the Court concluded.

Furthermore, the comparison of Saudi's claims against U.S. Trust with those against Marine Transport Corporation and Marine Transport Lines, Inc. is inapposite, U.S. Trust maintains. Saudi submitted some evidence that created a fact issue as to whether these other Defendants refurbished or remanufactured the crane. No evidence exists to raise a fact issue on Saudi's claims against U.S. Trust. The evidence that does exist, in contrast, disproves those claims, insists U.S. Trust. Because the Izens' conduct in failing to investigate their claims before they filed them and in refusing to dismiss them once contrary evidence was filed with the Court demonstrating that the Izens had sued the wrong party resulted in the sanctions against them, their motion for rehearing should be denied.

■ In a separate response (# 257) to the Izens' supplement, U.S. Trust insists that the supplement lacks a certificate of conference, misstates the law, contains an affidavit in which Joe Alfred Izen, Jr. makes false statements (which U.S. Trust identifies), was filed fourteen days after Rule 59's ten-day deadline for new trial motions,[9] attaches inadmissible exhibits, is irrelevant to the reasons why the Court

---

9. The Fifth Circuit, recognizing that Federal Rules of Civil Procedure 59 and 60 may be used to correct similar errors, applies a bright line rule: if the motion is served within ten days following entry of judgment and challenges the correctness of that judgment, it is treated as Rule 59 motion. An untimely Rule 59(e) motion is treated as a Rule 60 if the grounds asserted would support a Rule 60(b) motion. *See, e.g., Halicki v. Louisiana Casino Cruises, Inc.,* 151 F.3d 465, 470 (5th Cir. 1998), *cert. denied,* 526 U.S. 1005, 119 S.Ct. 1143, 143 L.Ed.2d 210 (1999); *Goodman v. Lee,* 988 F.2d 619, 623 n. 2 (5th Cir.1993). Nevertheless, the grounds for relief asserted by Saudi must be allowed under Rule 60(b).

To succeed on a motion based on newly discovered evidence, the movant must show that it exercised due diligence in obtaining the information (and not evidence that could have been discovered and presented at trial through the exercise of due diligence) and that the evidence is material and would have clearly caused a different result had it been admitted previously. *Government Financial Services One Ltd. Partnership v. Peyton Place, Inc.,* 62 F.3d 767, 771, 774 (5th Cir.1995). Furthermore that new evidence must have been is existence at the time of the trial and only discovered after the trial. *Id.* at 771.

imposed the sanctions, and was filed without leave of court. U.S. Trust also complains that the Izens filed the supplement on January 12, 2001 and then waited until January 16, 2001 to mail a copy to U.S. Trust, in attempt to prejudice its rights. U.S. Trust asks the Court to strike the supplement from the record.

U.S. Trust further asserts that all the exhibits are inadmissible hearsay that should be stricken. The Izens have not laid the proper foundation for a business records exception. Moreover, the documents are incomplete and unreliable. It reiterates that the legal and factual basis of the Court's judgment remains unchallenged by any competent evidence and should be affirmed, while the Izens' motion for new trial should be denied.

In response (# 260), the Izens disagree. Marine Transport Lines, Inc. and Marine Transport Corporation's response (# 261) in turn challenges the assertions made by the Izens about its counsel as inaccurate. Instrument # 261.

■■■ After reviewing the record, here, too, the Court finds the Izens' motion to be meritlous and unsupported by any competent evidence. Accordingly, the Court denies the motion for new trial.

2. In a related motion Defendant U.S. Trust's seeks sanctions and requests the Court to strike (# 260) the Izens' supplement to motion for new trial (# 254) and trial exhibit to their motion (# 259).

Because the materials are for review solely by the Court, which can disregard those submissions that are inadmissible, irrelevant, frivolous, or factually incorrect, the Court denies the motion to strike.

## C. Instrument # 245

Plaintiff moves for rehearing (# 245) on order signed on December 15, 2000 (# 222) granting summary judgment to Defen-

dants Koch Shipping, Inc. and Koch Supply & Trading Company Ltd. on all claims against them. Because the Court finds Plaintiff's arguments to be redundant and without merit, and because it stands behind its previous ruling, it denies the motion for rehearing.

## D. Instrument # 246

Plaintiff moves for rehearing (# 246) of the Court's memorandum and order dated December 21, 2000 (# 237) dismissing Marine Atlantic Ltd. for lack of personal jurisdiction under both Fed. R. of Civil P. 4(K)(2) and the Texas long-arm statute. Plaintiff complains that when Robert Hamshaw appeared for his noticed deposition on November 10, 2000, he failed to produce corporate documents regarding his power to act on behalf of Marine Atlantic Ltd. Moreover, his attorney stated that Hamshaw was appearing "in his personal capacity" and was not to answer certain questions regarding Monte Cristo Holdings ("Monte Cristo"), identified by Plaintiff as the corporate owner of Marine Atlantic Ltd., or Monte Cristo's shareholders. Plaintiff insists that Hamshaw "displayed an alarming lack of recall which could be alleviated solely by placing documents in front of him to refresh his memory." # 246 at p. 7. After the deposition, Saudi moved to compel Hamshaw's production of certain documents under a subpoena. duces tecum.

Plaintiff then moved to compel resumption of the deposition, but Judge Stacy upheld an objection by Marine Atlantic Ltd. After reviewing the transcript of Hamshaw's deposition, this Court found that there was no basis for the exercise of personal jurisdiction.

Saudi argues that the Court should have compelled Hamshaw to produce Marine Atlantic Ltd.'s records empowering Hamshaw to act as its assistant secretary. Sa-

udi asserts that Hamshaw stated in his deposition that the records were in the hands of Monte Cristo's CEO, who allegedly offices in Bermuda. Saudi charges the Court with reversible error in limiting relevant discovery. He also claims the Court erred by refusing to compel the resumption of Hamshaw's deposition. He objects to the Court's sealing of information reviewed by the Court *in camera* regarding the financial ownership of Monte Cristo, and indirectly of the S/T Marine Atlantic. He particularly emphasizes the failure of Defendant to produce the closing binder for the original sale of the vessel in 1994 to Marine Atlantic Ltd. from whatever company owned it previously.

Saudi further argues that Greg Doyle's deposition [10] shows the Court has personal jurisdiction over Marine Atlantic Ltd. He claims Marine Atlantic Ltd. acted through Doyle and his one-man corporation, Salisbury House, Inc. Ex. B, Doyle Dep., at pp. 51–53 (Hamshaw's connection with Marine Atlantic Ltd. was as an assistant secretary who once negotiated an agreement with Doyle and Salisbury House, Inc.).[11]

In response, Marine Atlantic Ltd. incorporates its original motion to dismiss for lack of personal jurisdiction (# 162), its reply to Saudi's response to that motion (# 177), and its response (# 221) to Saudi's motion to compel resumption of Hamshaw's deposition and production of documents, in which it demonstrated that it does not do business in Texas and is not subject to either specific or general jurisdiction here. It also notes that Saudi never perfected service of process on it. See Court's Order of August 31, 2000, entered Sept. 5, 2000 (# 159).

In seeking rehearing of the personal jurisdiction issue, Saudi relies on the excerpts of the depositions of Hamshaw and Doyle. In its order of December 21, 2000 (# 237), dismissing Marine Atlantic Ltd., the Court stated that it had reviewed the transcript of Hamshaw's deposition. In the instant motion Saudi submits for the first time extracts from Doyle's deposition, which was taken on November 30, 2000 and was available for submission to the Court before it rule originally. Thus Doyle's deposition is not "newly discovered" evidence, argues Marine Atlantic, Ltd., and should not be considered with the motion for rehearing. The Court agrees and refers the parties to footnote 9 of this memorandum and order. Even if the Court does consider the Doyle excerpts, Marine Atlantic maintains that the extracts do not prove the existence of contacts between Marine Atlantic Ltd. and the United States sufficient to support Rule 4(k)(2) jurisdiction.

Marine Atlantic Ltd., complaining of Saudi's "factual inaccuracies, exaggerations and borderline libelous comments,"[12] also challenges Saudi's version of the facts in his motion. At Hamshaw's deposition, which was taken on November 10, 2000 by agreement, Marine Atlantic Ltd. quotes another agreement of the parties reached during the deposition, Ex. 2 at p. 17, l.17— p. 18, l. 6.:

> Mr. Nork [13]: So we can agree, any questions you want to ask, please ask. I'll

---

10. Doyle had previously worked for Marine Transport Lines or M.T.L. Tankers.

11. Although Plaintiff cites numerous other pages, the Court finds they are irrelevant to its personal jurisdiction over Marine Atlantic Ltd.

12. As an example it points to Saudi's completely unsupported accusation that Julio Santo Domingo, "a Columbian gentleman ... [who owns controlling interest in Monte Cristo,"] was "engaged in money-laundering of drug profits."

13. Counsel for Marine Atlanic Ltd.

make the same objection I just made and I'll ask madame court reporter to certify this question or make a mark on this question.

I think the most expeditious way to resolve this is Mr. Hamshaw can furnish the answers later to the best of his knowledge and we will furnish them to the Court in camera so she can decide whether they are relevant.

Mr. Izen: And they will be there for appeal. That's fine by me.

During the deposition Hamshaw declined to answer two questions: (1) "Who were the investors you were representing?" (Ex. 2 at p. 17, ll. 5–6); and (2) "Does [Julio Mario Santo Domingo] have anything to do with financing vessels or any interest in any vessels that you know of?" (*Id.* at p. 61, ll. 13–13). According to the parties' agreed procedure, the Court *in camera* reviewed an affidavit filed by Hamshaw answering the questions and concluded in its order of December 20, 2000 that there was no valid basis for ordering resumption of his deposition or disclosure of the contents of Hamshaw's affidavit because the contents would not help Plaintiff demonstrate personal jurisdiction over Marine Atlantic Ltd.

Nor insists Marine Atlantic Ltd. did the Court commit irreversible error by refusing to order Hamshaw to produce the documents Saudi seeks. Marine Atlantic Ltd. points out that the deposition notice with a purported subpoena *duces tecum*, received by Hamshaw on November 6, 2000, did not notice Hamshaw as a corporate representative of Marine Atlantic. The Court's order of December 20, 2000 clearly stated, "Hamshaw, who was not deposed as a corporate representative of any of the Defendants, cannot be compelled to provided documents which are neither in his possession nor under his control." Thus the subpoena *duces tecum* was not enforceable. Marine Atlantic Ltd. alternatively argues that if Hamshaw was a party deponent, he had thirty days to respond to the subpoena, which would have extended the production date beyond the discovery deadline. Furthermore, it notes, the majority of the documents were first demanded in Saudi's motion to compel on December 1, 2000, the last day of discovery. The Court's order on December 20, 2000 stated, "To the extent Plaintiff seeks documents with the foregoing motion which were not identified in the subpoena duces tecum to Hamshaw, such document requests come too late, on the expiration of the discovery deadline."

Furthermore, insists Marine Atlantic Ltd., Doyle's deposition transcript does not demonstrate that he was an agent of Marine Atlantic Ltd. located in the United States. Outside of the single instance when Doyle was involved in executing a contract between Salisbury House and Marine Atlantic, Ltd, Saudi presents no evidence that any work by Doyle pursuant to that contract occurred in the United States or that Doyle's work under that contract, if any, was other than work typically undertaken by an independent contractor. Saudi has presented no evidence of any agency relationship between Doyle and Marine Atlantic Ltd. Although Saudi tries to show, as a contact of Marine Atlantic Ltd. with the United States, work performed by Doyle in negotiating shipyard contract issues relating to the Marine Atlantic when Doyle was employed by M.T.L. Tankers *in Singapore*, that work occurred years before Doyle started Salisbury House, Inc. in Massachusetts. Ex. 3, Doyle Dep. at p. 140, ll. 13–18; p. 141, l. 7—p. 142, l. 25; p. 44, ll. 6–10. Doyle testified that when he negotiated the shipyard contract in Singapore, he did not have a contract with Marine Atlantic and that he did not think he had specific authority to negotiate for

Marine Atlantic Ltd. Ex. 3, Dep. of Doyle, at p. 149, l.15—p. 150, l. 8. Furthermore, that negotiation in Singapore occurred while Doyle worked for a different company. Thus Saudi fails to show that Doyle acted as an agent for Marine Atlantic Ltd. in the United States and thus fails to support Rule 4(k)(2) jurisdiction.

■ After reviewing the record, the Court finds itself in complete agreement with Marine Atlantic Ltd. and thus denies the motion for rehearing.

## E. Instrument # 265

Plaintiff has filed cross motion for sanctions (# 265) against U.S. Trust. Because, as indicated above, the Court has rejected his arguments in the above motions, and because the Court finds there are numerous misrepresentations in that motion for sanctions, the Court denies the cross motion for sanctions.

## F. Instrument # 266

Defendants Acomarit Services Maritimes S.A. ("Acomarit"), Marine Atlantic Ltd., and Osprey Ship Management Inc.'s motion for entry of final judgment (# 266) under Rule 54(b) states that it is opposed, but no opposition has been filed. The Court has dismissed both Acomarit and Marine Atlantic Ltd. for lack of personal jurisdiction. It has also, in two separate orders, granted Osprey summary judgment on Plaintiff's Jones Act, unseaworthiness, and common-law and maritime negligence claims.

Because trial is imminent on the few remaining claims, and therefore a complete final judgment will issue in the near future, the Court denies the motion.

In sum the Court

ORDERS the following:

(1) All Plaintiff's and the Izens' motions for rehearing (# 242, 244, 245, and 246) are DENIED;

(2) Plaintiff's cross motion for sanctions (# 265) is DENIED;

(3) Defendants Acomarit Services Maritimes S.A. ("Acomarit"), Marine Atlantic Ltd., and Osprey Ship Management Inc.'s motion for entry of final judgment (# 266) under Rule 54(b) is DENIED;

(4) Defendant U.S. Trust's motion for sanctions and to strike (# 260) the Izens' supplement to motion for new trial and trial exhibit to their motion is DENIED; and

(5) the Court hereby ADOPTS the magistrate judge's memorandum and recommendation (# 262) as its own, OVERRULES Plaintiff's objections and exceptions to # 262, and GRANTS in large part Defendants' joint motion to strike (# 220) Plaintiff's expert witnesses, as indicated above and in the magistrate's memorandum and recommendation (# 262).